IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ETIENNE MAUGAIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-116-JLH-SRF |
| | ) | |
| FCA US LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 15th day of **January, 2025**, the court having considered the parties' discovery dispute letter submissions and associated filings (D.I. 187; D.I. 189; D.I. 190; D.I. 191;[1] D.I. 193), IT IS ORDERED that the pending motion for teleconference to resolve discovery disputes (D.I. 180) is addressed as follows:

1. **Background.** This case involves a putative class action on behalf of consumers who purchased or leased 2014 or newer Chrysler, Dodge, Jeep, or RAM-branded vehicles equipped with allegedly defective 3.6L Pentastar V6 engines (the "Class Vehicles"). (D.I. 34 at ¶ 1) The first amended complaint alleges that the engines of the Class Vehicles have defects in components of the valve train and in the electronic and hydraulic modules controlling the timing, phasing, and function of the camshafts, intake valves, lifters, and related components causing the engines to fail prematurely. (*Id.* at ¶ 4) The causes of action brought by named plaintiffs

---

[1] Defendant filed its opening letter submission on January 6, 2025. (D.I. 186) The following day, the court issued an oral order noting the moving submission's noncompliance with the court's discovery dispute procedures and giving Defendant until close of business on January 8, 2025 to submit a letter that complies with the discovery dispute procedures. (D.I. 188) The letter filed at D.I. 191 complies with the court's procedures. The court has considered D.I. 191 in lieu of D.I. 186.

Etienne Maugain, John Kundrath, Louise Shumate, Richard Archer, Denise Hunter, Stephen Drekosen, Kenneth Esteves, John Skleres, and Leonel Cantu (collectively, "Plaintiffs") are limited to breach of implied warranties and unjust enrichment. (*Id.*; D.I. 84; D.I. 85)

**DEFENDANT'S ISSUES**

**2. Defendant's motion to compel Plaintiffs' in-person appearances for a deposition in Delaware is GRANTED, and Plaintiffs' cross-motion for a protective order requiring remote depositions is DENIED without prejudice.** Citing the standard practice that a party filing a civil action in this district court "must ordinarily be required, upon request, to submit to a deposition at a place designated within this district[,]" Defendant moves to compel the in-person depositions of Plaintiffs in Delaware. (D.I. 191 at 1; D.I. 88 at ¶ 3(e)(ii)) Plaintiffs respond with a motion for a protective order under Rule 26(c)(1), arguing that their depositions should be taken remotely via videoconference to reduce the burden and expense on the parties. (D.I. 190 at 1-3) Alternatively, Plaintiffs request that the depositions be taken at a location near each Plaintiff's residence, with Plaintiffs reimbursing Defendant for any additional travel costs incurred. (*Id.* at 3)

**3.** Under Rule 30(b)(4), "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). However, "[t]he general rule with respect to the location of depositions is that the plaintiff must produce its witnesses in the district in which the plaintiff instituted the action, unless [it] has shown financial hardship or inability to attend the deposition in that district." *Invensas Corp. v. Renesas Elecs. Corp.*, C.A. No. 11-448-GMS-CJB, 2012 WL 2501106, at *2 (D. Del. June 27, 2012) (quoting *Aerocrine AB v. Apieron Inc.*, 267 F.R.D. 105, 108 (D. Del. 2010)); *see also Claiborne v. FedEx Ground Package Sys., Inc.*, 2023 WL 8529132, at *6 (W.D. Pa. Dec. 8,

2

2023) (explaining that "the default rule under Federal Rule of Civil Procedure 30 is that the examining party may set the place for the deposition of another party wherever he or she wishes[.]" (internal citations and quotation marks omitted)).

4. Plaintiffs have not shown hardship or an inability to attend their depositions in this district. During the parties' negotiations on the subject, Plaintiffs cited medical conditions, dependent care obligations and work schedules in support of their position that sitting for depositions in Delaware would cause "substantial stresses and burden." (D.I. 193) Plaintiffs do not cite any of these reasons in their responsive discovery dispute letter submission.

5. Instead, Plaintiffs argue that the cost benefits and time efficiencies of remote depositions are reason enough to grant a protective order requiring depositions to be taken remotely. (D.I. 190 at 1-3) In support of this argument, Plaintiffs rely on cases from the Eastern District of Michigan and the Delaware Court of Chancery. (*Id.* at 1 n.1-3) These cases are not binding and are distinguishable from the circumstances before the court in the instant case. In *Seidman v. Blue Foundry Bancorp*, the Court of Chancery granted a protective order to require a remote deposition of a single plaintiff, a shareholder in a summary action to obtain books and records. 2023 WL 400118 (Del. Ch. Jan. 24, 2023). The Eastern District of Michigan permitted remote depositions of the plaintiffs in a consumer class action for vehicle defects because of the risks posed by an uptick in cases during the COVID-19 pandemic. *See Reynolds v. FCA US, LLC*, 2022 WL 21842693 (E.D. Mich. May 26, 2022). These cases do not stand for the proposition that widespread use of remote depositions should be permitted without regard for considerations of hardship or the default position under Rule 30. Other cases cited by Plaintiffs are also unpersuasive. *See, e.g., Leon v. Orlando*, 2024 WL 3555879 (Del. Ch. July 19 2024) (offering no reasoning in support of order granting motion for a protective order requiring remote

depositions); *Bledsoe v. FCA US LLC*, 2022 WL 989333 (E.D. Mich. Mar. 31, 2022) (granting motion for judgment on the pleadings with no discussion of remote depositions).

6. Plaintiffs do not cite federal case authority from this district or within the Third Circuit suggesting that cost benefits and time efficiencies alone are sufficient to overcome the general rule that the plaintiff must produce its witnesses in the district in which the plaintiff instituted the action. The court is not persuaded to depart from the standard set forth in *Invensas*, which requires a showing of financial hardship or inability to attend an in-person deposition in this district. *Invensas*, 2012 WL 2501106, at *2; *see also Fallgatter v. EF Educational Tours*, 2024 WL 4536456, at *5 (M.D. Pa. Oct. 21, 2024) (denying request for remote deposition absent showing that extreme hardship or prejudice would result from a deposition in the noticing party's proposed forum). Because Plaintiffs have not satisfied that standard here, Defendant's motion to compel in-person depositions of Plaintiffs is GRANTED.

7. Plaintiffs' cross-motion for a protective order requiring remote depositions is DENIED without prejudice to renew. If any Plaintiff is unable to attend a deposition in Delaware due to a medical condition or dependent care obligations, on or before January 22, 2025, that Plaintiff may submit to opposing counsel a declaration or physician's note demonstrating an inability to travel. The parties shall then meet and confer on the location of any such depositions. If the parties reach an impasse, they shall file a joint letter submission limited to no more than four (4) pages on or before January 29, 2025 setting forth their respective positions. The court will then issue a ruling on the papers without setting a teleconference.

8. **Defendant's motion to compel private inspections of Plaintiffs' vehicles is GRANTED-IN-PART.** The parties dispute whether Defendant should be permitted to inspect Plaintiffs' vehicles outside the presence of Plaintiffs, their attorneys, or other representatives.

4

Plaintiffs do not object to the propriety of Defendant's request to inspect the vehicles. Instead, the focus of the parties' dispute is on whether Plaintiffs or their representatives should be permitted to observe the inspections to alleviate Plaintiffs' concerns that the inspections will damage the vehicles. (D.I. 190 at 4; D.I. 193, Ex. 1) Defendant maintains that the testing will be non-destructive, and private testing is needed in accordance with the work product doctrine. (D.I. 191 at 3-4)

9. "Courts determining whether to permit an opposing party to observe an inspection tend to balance one party's desire for privacy versus the potential harm it could cause—much like the balancing test used to determine whether to allow the testing at the outset." *Rasnic v. FCA US LLC*, 2018 WL 3861167, at *5 (D. Kan. Aug. 14, 2018). In balancing the prejudice arising from observed testing compared with the prejudice arising from a private inspection, the court may consider the description of the planned tests and assurances by the testing party that the inspection will be non-destructive. *Id.* An unsupervised inspection is generally permitted in the case of non-destructive testing. *Id.* (citing cases). Some courts have also considered whether the inspection implicates the work product protections of the testing party. *Id.*

10. The circumstances of this case weigh in favor of granting Defendant's motion to compel private vehicle inspections, with certain conditions. Defendant represents that it does not intend to conduct destructive testing, and Plaintiffs provide no basis for their suggestion that accessing components of the valve train assembly is inherently destructive. (D.I. 190 at 4; D.I. 191 at 3-4) However, Plaintiffs accurately state that Defendant has not described the tests it plans to run, which leaves open the question of whether the vehicles will be returned in their original condition after testing, with no damage. *See Davidson v. Apple, Inc.*, C.A. No. 5:16-

4942-LHK, D.I. 162 at 2 (N.D. Cal. Dec. 14, 2017) (explaining that the defendant should not unilaterally be permitted to decide whether a particular test is destructive).

11. To balance the interests of the parties on this record, Defendant shall be permitted to inspect Plaintiffs' vehicles privately, subject to the following conditions: (A) One week prior to the planned inspection, Defendant's counsel shall identify for Plaintiffs any tools, devices, and/or protocols it intends to use in its inspection of Plaintiffs' vehicles. Defendant is not required to outline its entire inspection process to Plaintiffs. *See Rasnic*, 2018 WL 3861167, at *9. (B) If Plaintiffs have a good faith basis to believe that any of the tools, devices, and/or protocols to be used in the inspections may cause damage to their vehicles, they may object to the use of same within 48 hours of receiving Defendant's notice. (C) Should the parties reach an impasse after meeting and conferring on any such objections, they shall submit to the court a joint letter submission of no more than four (4) pages outlining their respective positions. The court will then issue a ruling on the papers without setting a teleconference.

12. The parties shall otherwise follow Defendant's proposed procedure, which requires Plaintiffs to drop off their vehicles the morning of or the evening before the inspection in exchange for a loaner or rental vehicle to be used that day. (D.I. 191 at 4) Defendant confirms Plaintiffs' vehicles will be ready for pickup by close of business the day of the inspection and Plaintiffs will be reimbursed for mileage incurred during any test drive of the vehicles or, at Plaintiffs' election, have $10 worth of gas put in the vehicle. (*Id.*) Plaintiffs raised no objections to these aspects of Defendant's proposed procedure.

13. **Plaintiffs' motion to compel the production of damages documents in response to Request for Production Nos. 65, 68, 69, 70, 72, and 74 is GRANTED-IN-PART.** Plaintiffs present overbroad Requests for Production ("RFPs") seeking cost, pricing, and market share

6

information. (D.I. 187, Ex. 1) Although Plaintiffs defined various terms used in their RFPs, they did not include key terms such as "Competitor Vehicle" to inform Defendant of the scope of the requests. (*Id.*) Defendant objected to these RFPs in general and broad terms that do not always dovetail with the RFPs themselves. (*Id.*, Ex. 2) Moreover, Defendant's objections to the RFPs do not always align with the arguments raised in its responsive letter submission.

**14.** Defendant broadly contends that discovery responsive to the foregoing RFPs is not proportional to the needs of the case by challenging the merits of Plaintiffs' claims. (D.I. 189 at 1-3) For example, Defendant suggests that the claims are limited to isolated components of the valve train, the repairs made to the vehicles resolved the defects in the named Plaintiffs' vehicles, and any discovery should be limited to the individual claims of the named Plaintiffs because no class has been certified. (*Id.*) However, challenging the sufficiency or merits of Plaintiffs' claims is not a proper argument to avoid discovery. *See, e.g., Gregory v. Gregory*, 2016 WL 6122456, at *8 (D.N.J. Oct. 18, 2016) (finding the plaintiffs' relevance objection to the defendant's requests for production was not properly asserted because it sought a ruling on the merits of the complaint without a complete record or an appropriate motion); *Clark Motor Co. v. Manufacturers & Traders Tr., Co.*, 2008 WL 2498252, at *1 (M.D. Pa. June 18, 2008) ("Objections to interrogatories may not be used as a vehicle for deciding the merits of a case.").

**15.** Defendant also cites no authority to support its argument that discovery on all Class Vehicles should not be permitted unless and until the class is certified. (D.I. 189 at 2) Defendant's position is untenable under the current case schedule. Fact discovery is set to close in this case on May 30, 2025, while briefing on class certification is not scheduled to conclude until April 28, 2026. (D.I. 184 at 3) Limiting the scope of discovery to only the vehicles purchased by the named Plaintiffs would preclude Plaintiffs from obtaining discovery on all

Class Vehicles before the merits of the class certification motion could be considered by the court. The court addresses Defendant's challenges to specific RFPs below.[2]

**16. *RFPs 65 and 72.*** Plaintiffs' motion to compel the production of Class Vehicle pricing information, including the invoice price for each Class Vehicle and documents and communications showing distributor and dealer invoice prices and sales, in response to RFPs 65 and 72 is GRANTED. (D.I. 187, Ex. 1 at 12, 14) Defendant contends that it has already produced MSRP data, but Plaintiffs explain that this data often does not reflect the final price paid by consumers because Defendant does not sell directly to consumers. (D.I. 189 at 4; D.I. 187 at 2) Plaintiffs have shown that the additional pricing information regarding the actual price paid by consumers for the Class Vehicles is relevant to Plaintiffs' damages claim that purchasers of Class Vehicles overpaid because such vehicles were equipped with allegedly defective engines. (D.I. 187, Ex. 4, Part H at 5, 7)

**17. *RFPs 68 and 69.*** Plaintiffs' motion to compel the production of documents showing the costs of manufacturing and selling the Class Vehicles and competitor vehicles in response to RFPs 68 and 69 is DENIED without prejudice. (D.I. 187, Ex. 1 at 13) Plaintiffs cite Defendant's public financial statements, which show that Defendant acknowledged that fixed costs and changes in its vehicle sales volume have an impact on the profitability of the Class Vehicles. (D.I. 187, Ex. 4, Part H at 6) Plaintiffs do not precisely explain what is missing from this publicly available information or why a more detailed production is necessary and proportional under Rule 26. (*Id.* at 2) Moreover, Plaintiffs' assertion that Defendant should

---

[2] The parties' arguments regarding consideration of Plaintiffs' expert declaration of Dr. Hal Singer does not factor into the court's analysis. (D.I. 187 at 2-4; D.I. 189 at 2)

8

define the term "Competitor Vehicles" in RFP 69 confirms that Plaintiffs cannot articulate the scope of their own discovery request and cannot establish proportionality under Rule 26. (*Id.*)

18. ***RFPs 70 and 74.*** Plaintiffs' motion to compel the production of documents showing the market share of the Class Vehicles and competitor vehicles and the defect's impact on consumer demand in response to RFPs 70 and 74 is DENIED without prejudice. (D.I. 187, Ex. 1 at 14-15) As stated in the previous paragraph, Plaintiffs cannot properly shift responsibility to Defendant to define the scope of the "Competitor Vehicle" and "consumer demand" information sought in these requests. (*Id.*, Ex. 2 at 28, 32)

**19. Plaintiffs' motion to compel Defendant to update its production to Request for Production Nos. 3, 7, 12, and 17 to reflect the manufacture and sale of new vehicles is GRANTED.** RFPs 3, 7, 12, and 17 seek discovery on sales and production of vehicles incorporating the defective engine, as well as information on customer complaints and warranty claims. (D.I. 187, Ex. 5 at 8-10) Plaintiffs acknowledge that Defendant produced responsive information through vehicle model year 2022 and raise no issues with the form of Defendant's existing production. However, Plaintiffs contend that Defendant continues to sell vehicles with the defective engine and discovery on these vehicles will show the cost of any repairs to remedy the defect and whether Defendant intends to stop selling the vehicles with allegedly defective engines. (*Id.* at 3-4) Consequently, Plaintiffs seek supplementation of Defendant's production through model year 2025 in accordance with Rule 26(e). (*Id.*)

20. Defendant contends that Plaintiffs have not shown the relevance of post-2023 documents because the vehicles "have had no problems for years." (D.I. 189 at 4) Defendant's objection goes to the merits of Plaintiffs' claims and is not a basis to withhold discovery. The complaint defines "Class Vehicles" as "2014 or newer Chrysler, Dodge, Jeep, or RAM-branded

9

vehicles equipped with the 3.6L Pentastar V6 engine." (D.I. 34 at ¶ 1) There is no dispute that Defendant continues to make vehicles falling within the definition of "Class Vehicles." Consequently, Defendant is obligated under Rule 26(e) to supplement its discovery responses to include this additional information. Fed. R. Civ. P. 26(e)(1). For clarity, Defendant may produce post-2023 documents responsive to these requests in the form indicated in their discovery responses to avoid disclosure of customers' personal identifying information. (D.I. 187, Ex. 6 at 19)

21. **Conclusion.** For the foregoing reasons, IT IS ORDERED that the pending motion for teleconference to resolve discovery disputes (D.I. 180) is addressed as follows:

- A. Defendant's motion to compel Plaintiffs' in-person appearances for a deposition in Delaware is GRANTED, and Plaintiffs' cross-motion for a protective order requiring remote depositions is DENIED without prejudice to renew.
    - i. If any Plaintiff is unable to attend a deposition in Delaware due to a medical condition or dependent care obligations, on or before **January 22, 2025**, that Plaintiff may submit to opposing counsel a declaration or physician's note demonstrating an inability to travel.
    - ii. The parties shall then meet and confer on the location of any such depositions.
    - iii. If the parties reach an impasse, they shall file a joint letter submission limited to no more than four (4) pages on or before **January 29, 2025** setting forth their respective positions.

  iv. The court will then issue a ruling on the papers without setting a teleconference.

**B.** Defendant's motion to compel private inspections of Plaintiffs' vehicles is GRANTED-IN-PART as follows:

  i. One week prior to the planned inspection, Defendant's counsel shall identify for Plaintiffs any tools, devices, and/or protocols it intends to use in its inspection of Plaintiffs' vehicles. Defendant is not required to outline its entire inspection process to Plaintiffs. *See Rasnic*, 2018 WL 3861167, at *9.

  ii. If Plaintiffs have a good faith basis to believe that any of the tools, devices, and/or protocols to be used in the inspections may cause damage to their vehicles, they may object to the use of same within 48 hours of receiving Defendant's notice.

  iii. Should the parties reach an impasse after meeting and conferring on any such objections, they shall submit to the court a joint letter submission of no more than four (4) pages outlining their respective positions.

  iv. The court will then issue a ruling on the papers without setting a teleconference.

**C.** Plaintiffs' motion to compel the production of damages documents in response to Request for Production Nos. 65 and 72 is GRANTED. Defendant shall produce documents responsive to these requests on or before **January 29, 2025.** Plaintiffs' motion to compel the production of documents in

11

response to Request for Production Nos. 68, 69, 70, and 74 is DENIED without prejudice.

D. Plaintiffs' motion to compel Defendant to update its production to Request for Production Nos. 3, 7, 12, and 17 to reflect the manufacture and sale of new vehicles is GRANTED. Defendant shall produce documents responsive to these requests in accordance with Rule 26(e) on or before **January 29, 2025**.

IT IS FURTHER ORDERED that the discovery dispute teleconference set for January 15, 2025 at 3:00 p.m. is CANCELLED.

**22.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**23.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
United States Magistrate Judge