

Eckert Seamans Cherin & Mellott, LLC        TEL:  302 574 7400
222 Delaware Avenue                          FAX:  302 574 7401
7th Floor
Wilmington, DE 19801

Patrick M. Brannigan, Esquire
pbrannigan@eckertseamans.com
302.574.7406

**VIA CM/ECF**

Magistrate Judge Sherry R. Fallon
J. Caleb Boggs Federal Building
Unit 14, Room 6100
Wilmington, DE 19801

May 6, 2025

        **Re: *Maugain, et al. v. FCA US LLC,* C.A. No. 1:22-cv-00116-JLH**

Dear Judge Fallon:

Defendant FCA US LLC writes to address (i) Plaintiffs' document productions and (ii) FCA US's inspections of Plaintiffs' vehicles.[1]

**Plaintiffs' Document Production**

In September 2024, before being deposed, Plaintiffs confirmed they had "completed their searches for responsive documents and substantially completed their production." *See* Ex. A (letter), p. 7. Certain Plaintiffs have had their depositions taken since then, and it has become apparent that is not the case.

As Kundrath went about collecting the documents he produced leading up to his deposition, he did not know FCA US had made a specific set of requests for certain documents. *See* Ex. B (transcript), p. 52:13-17. Rather, he simply gave his counsel what he believed was "pertinent." *Id.* at pp. 49:23-50:3. When asked if he had withheld anything relating to his vehicle, Kundrath at first claimed he had sent his counsel "everything" he had. *Id.* at p. 50:4-7. But then it came to light that he had a variety of sales-related, service-related, and other documents responsive to FCA US's requests, including the original sales contract, that had not been included with his production.[2] *Id.* at p. 75:7-15; *see also id.* at pp. 56:6-76:21. It was only after this line of questioning that Kundrath produced another 240 pages of documents, but not for another month after his deposition was already completed.

Cantu testified that he could not "recall" whether he knew FCA US had specifically requested certain documents from him, *see* Ex. C (transcript), p. 38:5-9, and that he simply did "[not] know"

---

    [1] *See* D.I. 226 (motion), D.I. 227 (order).

    [2] Not only was Kundrath's production incomplete, but *more than half* of what he *did* produce was made up of duplicates. *See* Ex. B, pp. 68:19-25, p. 75:19-22.



Judge Sherry R. Fallon
May 6, 2025
Page 2

whether he had other records relating to his vehicle or its service that he had not produced, *see id.* at p. 42:6-20.[3]

Meanwhile, Skleres testified he had reviewed a list of document requests that FCA US had made, but that he had withheld responsive documents because, according to him (mistakenly), those documents had not been asked for.  *See* Ex. D (transcript), pp. 82:6-85:13.

Similarly, Esteves testified he was not aware FCA US had ever requested specific documents from him.  *See* Ex. E (transcript), p. 132:17-22.  And he had at least one set of email communications with FCA US he had not produced, *id.* at pp. 46:4-47:11, despite claiming he had searched for such communications, *id.* at pp. 44:20-24, 184:10-15.[4]

For Hunter, after producing just two days before her deposition a handwritten note about a relevant repair estimate, *see* Ex. F (transcript), pp. 99:16-100:21, Hunter testified she had not been advised she needed to look for anything more than records of engine repairs, *id.* at p. 152:1-16.  As a result, she admittedly withheld information about the vehicle's general maintenance and overall service history.  *Id.* at pp. 46:7-47:16.

Maugain, whose deposition was taken on May 1, produced forty-one pages of documents just two days before the deposition.  Archer, whose deposition is scheduled for May 6, gave FCA US more documents just a week before, and then again two business days before, his deposition.  Shumate continued dropping additional documents responsive to FCA US's requests a week before, then several days before, and then another forty-eight pages of records just two days before her May 7 deposition.  Dreikosen's deposition is scheduled for May 20 and it is entirely unclear whether FCA US should be expecting additional documents or information from him.

At this point, FCA US cannot discern whether Plaintiffs have made any real effort at a search for documents responsive to its requests, nor can FCA US tell which documents Plaintiffs have selectively withheld or why.

FCA US moves this Court for an order (i) requiring Plaintiffs to complete their respective document searches and productions by a date certain, (ii) supplement their written responses to identify what documents have been withheld and whether those documents have been withheld pursuant to any objection, and (iii) allow FCA US to re-open Plaintiffs' depositions where needed following the receipt of Plaintiffs' supplemental written responses.

---

[3] A third of the documents Cantu produced were duplicates.  *See* Ex. C, pp. 41:21-42:5.

[4] Esteves produced nearly 7,000 pages, but 6,883 of those were comprised of unintelligible, nonresponsive programming language for "technical or load files" from a CD-ROM.  *See* Ex. E, p. 138:4-23; *see also id.* at pp. 133:13-137:16.



Judge Sherry R. Fallon
May 6, 2025
Page 3

**Plaintiffs' Vehicle Inspections**

This Court previously ordered that FCA US could conduct the non-destructive inspections of plaintiffs' vehicles outside the presence of Plaintiffs and their representatives. *See* D.I. 194, pp. 4-5. But, when the parties were thereafter scheduling such an inspection, Plaintiffs indicated their "representative" planned to attend, stating:

> We request that the vehicle be inspected within 30 days of this email. The vehicle, as well as Plaintiffs' representative, are available for inspection for the next 30 days excepting the week of March 30th.

*See* Ex. G, p. 5.

FCA US sought to confirm the assertion that Plaintiffs intended to attend the inspection: "it sounds like plaintiffs plan to have a 'representative' attend the inspection. Is that the case?" *Id.* at p. 4. Plaintiffs replied affirmatively:

> Plaintiffs do intend to send a representative to attend the inspection.

*Id.* at p. 3.

FCA US responded that "[b]ecause the Court has already issued an order on that point, we'll need to go back and settle that before FCA US can proceed with any inspection of Cantu's (or any other plaintiff's) vehicle. Let's please plan to have our meet-and-confer on that during tomorrow's scheduled call too." *Id.* at p. 2; *see also* D.I. 194. But Plaintiffs declined the request, insisting:

> Please kindly schedule the inspection at the indicated dealership for one of the times we provided. We see no need for further discussion of this matter during tomorrow's meet and confer.

*See* Ex. G., p. 1. During another of the parties' conferences on April 8 when FCA US again raised this issue, Plaintiffs said they were "not prepared" to discuss it.

After FCA US moved for this teleconference, *see* D.I. 226, Plaintiffs for the first time offered their availability "on Tuesday, April 22 from 10-11:30 am or after 2 pm ET to discuss these issues," *see* Ex. H, p. 3, but not before accusing FCA US of "deliberately mislead[ing] the Court" because Plaintiffs had "clarified our representative will simply be verifying the condition prior to and after the inspection but not attending the inspection itself."[5] *Id.* That, however, is *not* what their communications said. *See generally* Ex. G. Plaintiffs continued on to claim they had "never

---

[5] Plaintiffs assert they were unaware of "the nature of FCA [US]'s purported dispute" until FCA US's motion seeking this teleconference, *see* Ex. H, p. 3, but the parties' communications obviously belie that claim, *see generally* Ex. G.



intended to attend FCA [US]'s inspection," which is, obviously, exactly the opposite of what they told FCA US.  *See* Ex. H, p. 3; *see also generally* Ex. G.

The parties ultimately held their meet-and-confer discussion on April 30 and Plaintiffs for the first time conceded that neither they nor their representatives would attend the inspection.  *See* Ex. I.

Because FCA US needed to seek the Court's assistance before Plaintiffs would agree to meet-and-confer on the matter or comply with the Court's order, FCA US moves the Court for an order requiring that Plaintiffs pay FCA US's reasonable expenses incurred, including attorney's fees. *See* Fed. R. Civ. P. 37(a)(5)(A) ("[I]f the … requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

Respectfully submitted,

 /s/ Patrick M. Brannigan
Patrick M. Brannigan, Esquire